Marc C. Forsythe - State Bar No. 153854
mforsythe@goeforlaw.com
Charity J. Manee – State Bar No. 286481
cmanee@goeforlaw.com
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Suite 210, Building D
Irvine, CA 92614
Telephone:  (949) 798-2460
Facsimile:  (949) 955-9437

Eric Landau (State Bar No. 138849)
elandau@egsllp.com
Travis Biffar (State Bar No. 217593)
tbiffar@egsllp.com
**ELLENOFF GROSSMAN & SCHOLE, LLP**
18101 Von Karman Avenue, Suite 230
Irvine, California 92612-7132
Telephone:    (949) 679-6400
Facsimile:    (949) 679-6405

Attorneys for Khalid Bin Jabor Al Thani and
Trivalley Trading & Contracting, WLL

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:21-bk-10619-MW |
| GLOBAL DISCOVERY BIOSCIENCES CORPORATION, a Delaware corporation, | Bankruptcy filed March 11, 2021 |
| | Chapter 7 |
| Debtor | **NOTICE OF MOTION AND SECOND MOTION FOR ORDER DISMISSING DEBTOR'S BANKRUPTCY CASE FOR LACK OF JURISDICTION** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ERIC LANDAU ATTACHED HERETO IN SUPPORT THEREOF** |
| | **[REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH]** |
| | Hearing Date: October 25, 2022 |
| | Time:          11:00 a.m. |
| | Place:          Courtroom 5C |
| | 411 West Fourth Street |
| | Santa Ana, CA 92701 |

**TO THE HONORABLE SCOTT CLARKSON, UNITED STATES BANKRUPTCY JUDGE, TO THE DEBTOR, GLOBAL DISCOVERY BIOSCIENCES CORPORATION, TO MARK SHARF, APPOINTED CHAPTER 7 TRUSTEE, DR. DOUGLAS HARRINGTON, DAN AGRESS, WEILDAND GOLDEN GOODRICH LLP, JEFFREY I. GOLDEN, ESQ., AND TO ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that, on October 25, 2022 at 11:00 a.m. before the Honorable Scott Clarkson, United States Bankruptcy Judge presiding, in Courtroom 5C of the United States Bankruptcy Court located at 411 West Fourth Street, Santa Ana, California 92701, Khalid bin Jabor Al Thani ("Dr. Khalid") and Trivalley Trading & Contracting, WLL ("Trivalley," collectively with Dr. Khalid, "Movants"), the majority shareholders of Global Discovery Biosciences Corporation, the purported debtor ("Debtor") in the above-captioned bankruptcy case ("Bankruptcy Case"), moves ("Motion") the Court for an order dismissing the Bankruptcy Case for lack of jurisdiction, since Debtor's case was filed without proper corporate authority.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities and Declaration of Eric Landau, Esq. ("Landau Declaration"), and the concurrently filed Request for Judicial Notice ("RJN").

This Motion seeks dismissal of the Bankruptcy Case on the grounds it was filed without valid corporate authorization and, as such, the Court lacks jurisdiction.  Specifically, the parties were engaged in pre-petition litigation in Orange County Superior Court and the Delaware Chancery Court, stipulated to a binding general reference in the Orange County Superior Court case on the bifurcated issue to determine control of the Debtor, and after a 10-day trial that determined that Movants controlled the Debtor, this Bankruptcy Case was filed four (4) minutes before the Orange County Superior Court was schedule to rule upon Movant's summary adjudication motion to confirm Movant's control of the Debtor, among other things.  Indeed, as confirmed by a now final judgment, no director or board of directors authorized this bankruptcy filing, much less the board elected by Movants, which own the majority of Debtor's shares.

This Motion is a renewed motion in the sense that Movants previously sought similar relief at the outset of this case, *i.e.* dismissal for lack of jurisdiction, among other things.

Movants' original request for dismissal was denied, however, the Predecessor Court ordered abstention from the dispute over control of the Debtor including the constitution of Debtor's board of directors on the date this case was commenced.  To facilitate a resolution of such dispute in the pending state court litigation, the Court granted limited relief from the automatic stay to allow the state court matters to proceed to final judgment.  The Delaware Chancery Court has since held a trial on the matter and by judgment entered on June 9, 2022, which was not subsequently appealed and is now final, confirmed that the rightful board of directors of the Debtor did not include those purporting to act on Debtor's behalf in filing the Bankruptcy Case.

Separately, Movants will be filing a motion (or motions) for sanctions against the persons and counsel responsible for filing this case, given that the filing was motivated by their bad faith, among other things.[1]  Specifically, subsequent to the ruling from the Honorable Judith Ryan in the binding reference that concluded Movants controlled the Debtor, the following occurred:

- Matthew Nunez, who served as Debtor's CEO since 2018, while not coincidentally also serving as CEO of Predictive Health Diagnostics Company ("Predictive Health"),[2] resigned as Debtor's CEO on March 10, 2021, the day before the Petition Date.  On that day, Dr. Harrington, his wife Estrella, and others also resigned their positions as members of the Old Board.  That same day, Debtor claims that it appointed Dan Angress to be CEO.  Mr. Angress is a long-time associate of Dr. Harrington, and is listed as an unsecured creditor of the Debtor pursuant to its Schedule E/F.  It is unclear who appointed Dan Angress, certainly not the New Board.

- Virtually all of Debtor's employees were transferred to Predictive Health just before the Petition Date (defined below).[3]

---

[1] Rule 9011(c)(1)(A) provides in pertinent part, "A motion for sanctions under this rule shall be made separately from other motions or requests…"

[2] Predictive Health is a company affiliated with Debtor's co-founder, and the architect of this fraudulently filed bankruptcy case, Dr. Douglas S. Harrington ("Dr. Harrington").

[3] It was admitted in the opposition filed in Debtor's name to the Original Dismissal Motion that "…the majority of

- Through Dr. Harrington, Debtor fired its billing company that handled all of its accounts receivable collections shortly before filing this case and at a time when its revenue collections were at a historically high level, and handed collection duties over to Predictive Health, resulting in drastically lower collections.

- All of Debtor's former directors and officers resigned the day before the Petition Date.

- As documented through 341(a) testimony, Mr. Angress was woefully uninformed about Debtor's business and operations, yet Weiland Golden Goodrich LLP, and Jeffrey I. Golden, Esq., looked to Mr. Angress to sign the bankruptcy petition and all other pleadings while knowing how Dr. Harrington and Predictive Health were engaging in gutting the Debtor of its assets, employees and business operations.

THIS MOTION IS BEING HEARD ON REGULAR NOTICE PURSUANT TO LBR 9013-1.  IF YOU WISH TO OPPOSE THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE WITH THE COURT AND SERVE A COPY OF IT UPON THE MOVANT OR MOVANT'S ATTORNEY AT THE ADDRESS SET FORTH ABOVE NO LESS THAN FOURTEEN (14) DAYS PRIOR TO THE ABOVE HEARING DATE.  IF YOU FAIL TO FILE A WRITTEN RESPONSE TO THIS MOTION WITHIN SUCH TIME PERIOD, THE COURT MAY TREAT SUCH FAILURE AS A WAIVER OF YOUR RIGHT TO OPPOSE THE MOTION AND MAY GRANT THE REQUESTED RELIEF.

Dated: October 3, 2022                    Respectfully submitted,

**GOE FORSYTHE & HODGES LLP**

By:  /s/Marc C. Forsythe
Marc C. Forsythe
Charity J. Manee
Attorneys for Khalid Bin Jabor Al Thani
and Trivalley Trading & Contracting,
WLL

---

Debtor's employees are now employed by Predictive Health…"  *See* Docket No. 37 at 25:27-26:2, attached **as Exhibit 14** to the RJN.  Rather than transferring its employees to Predictive Health to protect Debtor, Angress admitted at the Initial 341(a) hearing that this was done to protect Predictive Health.  *See* transcript from Debtor's initial April 14, 2021 341(a) Meeting of Creditors ("Initial 341(a)").  Docket No. 57 at 38:8-15.

# Table of Contents

I.  INTRODUCTION ...................................................................................................5

II.  FACTUAL HISTORY ..........................................................................................6

   B.  The OC Litigation .........................................................................................6

   C.  The Judicial Reference Proceeding ..............................................................8

   D.  Movants' Demand for Inspection of the Debtor's Books and Records. ...........9

   E.  Movants' Removal of the Board of Directors Effective As of January 31, 2021. ..............9

   F.  The Timing of Debtor's Bankruptcy Filing. ...............................................10

   G.  Debtor's Meritless Bankruptcy Filing. .......................................................11

III.  ARGUMENT .....................................................................................................17

   A.  The Court Should Dismiss this Case for Lack of Jurisdiction. ......................17

IV.  CONCLUSION ...................................................................................................20

V.  DECLARATION OF ERIC LANDAU .................................................................21

# Table of Authorities

Page

## Cases

*Chen-Cheng Wang ex rel. United States v. FMC Corp.*,
 975 F.2d 1412 (9th Cir. 1992) ............................................................................18

*Edgar v. Mite Corp.*,
 457 U.S. 624 (1982)..........................................................................................19

*In re Al-Wyn Food Distributors, Inc., Inc.*,
 8 B.R. 42 (Bankr. M.D. Fla. 1980) ....................................................................18

*In re Arkco Props., Inc.*,
 207 B.R. 624 (Bankr. E.D. Ark. 1997) ...............................................................18

*In re Cloverleaf Properties*,
 78 B.R. 242 (9th Cir. BAP 1987) .......................................................................17

*In re ComScape Telecommunications, Inc.*,
 423 B.R. 816 (Bankr. S.D. Ohio 2010)...............................................................20

*In re Gen-Air Plumbing & Remodeling, Inc.*,
 208 B.R. 426 (Bankr. N.D. Ill. 1997) .................................................................18

*In re Innocenti*, LLC,
 2016 Bankr. LEXIS 2337 (Bankr. N.D. Cal 2016)...............................................17

*In re N2N Com., Inc.*,
 405 B.R. 34 (Bankr. D. Mass. 2009) ..................................................................20

*In re Sino Clean Energy, Inc.*,
 901 F.3d 1139 (9th Cir. 2018) ...........................................................................20

*In re Yellow Cab Co-op. Ass'n*,
 144 B.R. 505 (D. Colo. 1992) ............................................................................18

*Keenihan v. Heritage Press, Inc. (In re Heritage Press, Inc.)*,
 19 F.3d 1255 (8th Cir. 1994) .............................................................................17

*Price v. Gurney*,
 324 U.S. 100 (1945)..........................................................................................17

*Spencer Enters., Inc. v. United States*,
 345 F.3d 683 (9th Cir. 2003) .............................................................................18

## Bankruptcy Code

8 Del. C. § 141(a)............................................................................................19

8 Del. C. § 141(b) ............................................................................................21

8 Del. C. § 220 ...................................................................................................................9

8 Del. C. § 225 .................................................................................................................10

8 Del. C. § 228(a)..............................................................................................................19

Cal. Code Civ. Proc. § 638 .................................................................................................8

Nev. Rev. Stat. § 78.315(1)...............................................................................................21

**Treatises**

2 Collier on Bankruptcy P 301.04 (16th 2020)...............................................................18

9A Am.Jur.2d Bankruptcy § 894 .....................................................................................20

Restatement (Second) of Conflict of Laws § 302 (1971) ...............................................19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Debtor filed its bankruptcy petition without board authorization solely for the purpose of avoiding the consequences of pending litigation in California and Delaware, and to mask the fact that the Debtor's valuable intellectual property was unlawfully transferred to Predictive Health Diagnostics Company ("Predictive Health"), a company affiliated with Debtor's co-founder, and the architect of this fraudulently filed Bankruptcy Case, Dr. Douglas S. Harrington ("Dr. Harrington").  Immediately after this case was filed, Movants moved to dismiss it for lack of jurisdiction and bad faith, among other things ("Original Dismissal Motion").[1]  In the Original Dismissal Motion, Movants clearly argued that dismissal for lack of authority was mandatory, and appealed the order denying dismissal, which appeal remains pending (among others).  However, the Predecessor Court denied Movants' requests for dismissal, instead granting an alternative request that it abstain from deciding the disputes surrounding corporate control/authority and allow the state courts presiding over prebankruptcy litigation to resolve those disputes which would entail settling the question of whether the Bankruptcy Case was properly authorized.

To facilitate the purpose of its abstention ruling, the Predecessor Court granted limited relief from the automatic stay regarding three state court lawsuits pending in the Delaware Chancery Court and California Superior Court concerning the disputes over control of the Debtor.

After Dr. Harrington's countless maneuvers to delay litigation on all state court fronts, including seeking to stay the state court litigation in the Delaware Chancery Court (after the Predecessor Court *lifted* the automatic stay in this case), the dispute over the ownership and control of the Debtor finally was tried in the Delaware Chancery Court, which entered its judgment on June 9, 2022 in favor of Movants ("Control Judgment").[2]  The Control Judgment

---

[1] The full title of the Original Motion to Dismiss is the *Motion for an Order: (1) Dismissing the Bankruptcy Case for Lack of Jurisdiction, (2) Dismissing the Bankruptcy Case for Bad Faith Pursuant to Bankruptcy Code § 1112(b), (3) Abstaining from the Bankruptcy Case Pursuant to Bankruptcy Code § 305, (4) Exercising Mandatory or Permissive Abstention from Adjudicating any Disputes Over the Ownership and Corporate Control of Debtor Under 28 U.S.C. Section 1334(c), and (5) Awarding Movants Sanctions Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure,* filed on April 5, 2021 [Docket No. 24].

[2] The Control Judgment is **Exhibit 22** to the RJN.

1    confirmed what Movants have argued all along, that their shareholder consent served pre-

2    bankruptcy in January 2021 validly removed the existing slate of directors ("Old Board") and

3    replaced it with a new slate ("New Board"), which did not authorize Debtor's bankruptcy filing.

4    The Control Judgment is now final, with no party having appealed it.

5        In light of the Control Judgment and based on established Supreme Court precedent,

6    dismissal of this case for lack of jurisdiction is required.  Movants will be separately moving the

7    Court for sanctions against those responsible for filing Debtor's meritless bankruptcy petition (Dr.

8    Harrington, Mr. Angress, and Weiland Golden Goodrich LLP, and Jeffrey I. Golden, Esq.,

9    collectively, the "Responsible Parties"), which has caused immense damage and inflicted great

10    cost on Movants, the Debtor, and various other parties in interest.

11    **II.    FACTUAL HISTORY**

12    **A.  Debtor's Founding Was Made Possible by the Investment of Movants.**

13        Debtor is a private biotechnology company which manufactures, distributes, and processes

14    a diagnostic cardiac blood test, called the "PULS Cardiac Test," that is used to identify markers of

15    heart disease.  In April 2014, after being "pitched" on the opportunity to invest in Debtor by Dr.

16    Harrington, Movants funded the seed investment that resulted in Debtor's formation.  *See* Judge

17    Ryan's [Second] Amended Statement of Decision ("SASOD"), 40:1-26[3].

18        After Debtor launched and began marketing the PULS Cardiac Test, Dr. Harrington took

19    improper steps to wrest control of Debtor for himself.  First, Dr. Harrington denied Movants their

20    shareholder rights to call a shareholder meeting and to inspect the books and records of the

21    company.  Then, Dr. Harrington caused Debtor to initiate the OC Litigation (defined below)

22    seeking to deny the ownership of Movants' shares in the Debtor.

23    **B.  The OC Litigation**

24        On October 4, 2016, Debtor (under Harrington's control) filed a complaint ("Complaint")

25    against Movants in the Orange County Superior Court, commencing the case styled *Global*

26    *Discovery Biosciences Corporation v. Khalid Bin Jabor Al Thani et. al*., Case No. 30-2016-

27

28

[3] As noted below, the SASOD is **Exhibit 5** to the RJN.

00878822-CU-BC-CJC ("OC Litigation").  The Complaint is attached as **Exhibit 1** to the RJN.  In the OC Litigation, Debtor falsely claimed that the shares purchased by Dr. Khalid and issued to Trivalley were "contingent" upon Dr. Khalid and Trivalley making additional investments in the Debtor.  SASOD at 45:11-24.  Debtor made these false claims despite accepting Dr. Khalid's investment, delivering a share certificate to Dr. Khalid reflecting Trivalley's stock ownership, and holding Trivalley out to others as a forty percent (40%) owner.[4]  The Complaint asserts causes of action for: breach of oral contract; cancellation of Dr. Khalid's and Trivalley's stock certificate for shares of Debtor, fraud by Dr. Khalid; intentional interference with Debtor's economic prospects; and declaratory and injunctive relief as to Dr. Khalid's efforts to exercise rights as a shareholder of Debtor.  All of Debtor's claims are predicated on the notion that Dr. Khalid is not a valid stockholder.  Complaint, ¶¶ 13-17, 23, 26-29, 44 and 49.  Judge Ryan rejected this proposition.  SASOD at 40:1-41:20.

On July 7, 2017, Debtor filed its First Amended Cross-Complaint ("FACC") against Movants and a new cross-defendant, Najib Khoury, alleging additional causes of action for: conversion; and declaratory relief against Dr. Khalid and Trivalley.  The FACC is attached to the RJN as **Exhibit 2**.  The FACC alleges that Mr. Khoury was also not a valid stockholder.  FACC, ¶¶ 15-17, 40-41, 43, 56.  As a part of the Bifurcated Issue (defined below), Judge Ryan found and determined that Mr. Khoury was a valid stockholder and that his transfer of his stock ownership to Dr. Khalid and Trivalley was valid.  SASOD at 14-20.

Movants filed their Second Amended Cross-Complaint ("SACC"), on May 23, 2017, against Debtor alleging causes of action for fraud/intentional misrepresentation, fraud/intentional concealment of material facts, fraud/negligent misrepresentation of material facts, breach of oral contract, breach of implied covenant of good faith and fair dealing, declaratory relief, accounting and injunction, material misrepresentations and misleading statements in the sale of securities, and breach of fiduciary duty.  Attached to the RJN as **Exhibit 3** is a copy of the SACC.

---

[4] As determined by the SASOD (defined and discussed further below), Movants initially acquired 40% and subsequently acquired an additional 15% ownership stake in the Debtor. *See* SASOD (defined below) at 43:12-17.

## C.  The Judicial Reference Proceeding

On December 19, 2017, Movants and Debtor *stipulated* to a binding general reference under Section 638 of the Code of Civil Procedure[5] for the resolution of the following issue ("Bifurcated Issue"):

> Whether KHALID and/or TRIVALLEY has a valid ownership interest in shares of GDBC stock, and if so, how many shares, including, without limitation, any shares purportedly assigned to said parties by NAJIB E. KHOURY.

Stipulation and Order to Mediate and to Resolve Certain Disputes by Judicial Reference, ROA 142, (the "Stipulation") 2:9-14, 20-25.  A copy of the Stipulation is attached as **Exhibit 4** to the RJN.

Judge Ryan presided over a ten-day trial ("Bifurcated Trial") and, on November 20, 2019, issued her final findings and determinations on the issue of Dr. Khalid's and Trivalley's ownership of Debtor in her fifty (50) page SASOD.  A copy of the SASOD is attached as **Exhibit 5** to the RJN.  Pursuant to Section 643(c) of the Code of Civil Procedure, the parties to the Bifurcated Trial submitted initial objections on September 6, 2019, and a second set of objections on October 31, 2019.  SASOD, 2:17-19, 3:2-4.  Judge Ryan considered all of the parties' objections, addressed each individually, and stated her final decision on the Bifurcated Issue.  SASOD, 11:7-21:18.

Judge Ryan ultimately found and determined that Dr. Khalid and Trivalley are entitled to "fifty-five percent (55%) ownership interest in the total number of shares of GDBC that may otherwise be determined in further proceedings in this matter." *Id.*, 51:24-26, UMF 1.  Despite Dr. Harrington's best efforts to obfuscate, Judge Ryan found that "[a]lthough the evidence as to the number of total shares was inconclusive, *the evidence as to the percentage of shares to which Defendants were otherwise entitled was conclusive*. . . ." *Id.*, 23:8-10 (emphasis added).

_____

[5] Section 638 of the Code of Civil Procedure provides, in pertinent part,

> A referee may be appointed upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes, or upon the motion of a party to a written contract or lease that provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties:
> (a)  To hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision.
> (b)  To ascertain a fact necessary to enable the court to determine an action or proceeding.

1    Judge Ryan found that, although she was empowered to determine the total number of

2    shares to which Dr. Khalid is entitled, she was unable to do so "due in no small part to the actions

3    of Dr. Harrington[.]" *Id.*, 22:16-19, 22-23; Stipulation, 2:9-14, 20-25.  As detailed in the SASOD,

4    Dr. Harrington played fast and loose with the ownership of the company and fabricated cap tables

5    and corporate documents, at will, to suit his own needs.  *See e.g.*, SASOD at 41:14-20 (citation to

6    underlying records omitted) ("Finally, certain evidence in the record submitted in support of the

7    claims of Dr. Harrington was shown by credible evidence to, in all likelihood, have been created at

8    a later time than represented on the document and thus calling into question certain testimony

9    regarding the events that are represented."

10    Judge Ryan found that "…as Defendants [Movants] correctly assert, Dr. Harrington has on

11    occasion stated **he is the corporation** and there is evidence in the record that he acted in accord

12    with that understanding."  SASOD at 48:22-24 (emphasis added).

13    **D.  Movants' Demand for Inspection of the Debtor's Books and Records.**

14    During the pendency of the OC Litigation, on November 25, 2020, and based on their fears

15    that Dr. Harrington was engaging in self-dealing, among other breaches of fiduciary duty,

16    Movants filed an action in the Delaware Chancery Court to enforce their rights to inspect the

17    Debtor's books and records under the Section 220 of Delaware General Corporation Law, 8 Del.

18    C. § 220, in the action styled *Trivalley Trading & Contracting, WLL v. Global Discovery*

19    *Biosciences Corporation*, C.A. No. 2020-1015-JRS ("Delaware Inspection Action").  Attached to

20    the RJN as **Exhibit 6** is a copy of the complaint initiating the Delaware Inspection Action.  Trial

21    in the Delaware Inspection Action was set to commence on April 28, 2021.  Attached to the RJN

22    as **Exhibit 7** is a copy of the docketed letter from the Chancery Court to the parties informing

23    them of the trial date.

24    **E.  Movants' Removal of the Board of Directors Effective As of January 31, 2021.**

25    On February 12, 2021, Movants and Mr. Khoury, who together own 60% of the

26    outstanding shares of the Debtor (55% in Movants and 5% in Mr. Khoury) exercised their

27    majority shareholder voting rights by executing and delivering pursuant to Delaware law that

28    certain shareholder consent ("Consent"), effective as of January 31, 2021, removing the Old Board

1  and replacing it with the New Board consisting of Dr. Khalid, Kenin M. Spivak, Robert Kasprzak,

2  and Daniel Elliott.  A true and correct copy of the Consent is attached as Exhibit A to the verified

3  complaint ("Consent Complaint") initiating the Delaware Consent Action (defined below), which

4  is **Exhibit 8** to the RJN.  A true and correct copy of the Affidavit of Service for the Consent is

5  attached as Exhibit B to the Consent Complaint, Exhibit 8 to the RJN.

6           On February 16, 2021, instead of acknowledging the validity of the Consent, Debtor sent

7  Movants' counsel a response letter refusing to recognize the validity of the Consent ("Consent

8  Denial Letter"), again asserting that Movants were not stockholders.  A true and correct copy of

9  the Consent Denial Letter is attached as **Exhibit C** to the Consent Complaint, **Exhibit 8** to the

10  RJN.

11          On March 8, 2021, in light of the Consent Denial Letter, Movants and Khoury filed their

12  verified Consent Complaint under Section 225 of the Delaware General Corporation Law, 8 Del.

13  C. § 225, to obtain declaratory relief that the Consent was effective in removing and replacing the

14  Old Board, in accordance with Section 228 of the Delaware General Corporation Law.  That case

15  is styled *In re Global Discovery Biosciences Corporation, a Delaware Corporation*, C.A. No.

16  2021-0196-SG ("Delaware Consent Action").  As discussed below, the Delaware Consent Action

17  was decided with entry of the Control Judgment, and such ruling is the lynchpin of this Motion.

18  **F.  The Timing of Debtor's Bankruptcy Filing.**

19          On March 11, 2021 ("Petition Date"), as reflected by the time-stamping on Debtor's

20  electronically filed bankruptcy petition, Debtor commenced this case by filing its bankruptcy

21  petition just four (4) minutes after the Superior Court was scheduled to hear and rule upon

22  Movants' Motion for Summary Adjudication ("MSA") in the OC Litigation.  The MSA is attached

23  as **Exhibit 9** to the RJN.  By the time the hearing was called, counsel for Debtor announced the

24  bankruptcy and, within hours, filed stays in the OC Litigation, Delaware Inspection Action, and

25  Delaware Consent Action; achieving its goal of vacating the pending hearings and trials and

26  preventing the Orange County court from issuing summary adjudication affirming Movants'

27  majority ownership.

28

1         The Petition Date is just eighteen (18) calendar days before trial in the OC Litigation on

2    any remaining issues/claims not resolved by the MSA, scheduled to commence on March 29,

3    2021.  A copy of the case docket from the OC Litigation, (reflecting the jury trial date at Docket

4    Entry 434), is attached as **Exhibit 10** to the RJN.[6]  As noted above, trial in the Delaware

5    Inspection Action was scheduled for April 28, 2021.  On or about March 5, 2021, in the Delaware

6    *Consent Action*, Movants filed Plaintiffs' Motion to Expedite and for Entry of a Status Quo Order

7    ("Status Quo Motion"), the entry of which would preserve the status quo of the board of directors

8    by preventing non-unanimous actions to be taken by Debtor outside of the routine day-to-day

9    operations of Debtor conducted in the ordinary course of business, until this summary proceeding

10    was adjudicated.  Movants filed their Status Quo Motion to prevent Dr. Harrington from further

11    dissipating Debtor's assets after learning of his apparent transfers of Debtor's intellectual property,

12    among other things.  The Status Quo Motion is attached as **Exhibit 11** to the RJN.

13    **G. Debtor's Meritless Bankruptcy Filing.**

14         Debtor's filing commencing this case was nothing more than a "skeletal" petition.  On

15    March 25, 2021, Debtor filed its remaining schedules and statements, confirming Movants'

16    suspicions that Debtor, under the control of Dr. Harrington, has transferred its most valuable asset,

17    its intellectual property, which Debtor fraudulently describes in its Schedule G as a "Limited Non-

18    Exclusive Technology License Agreement PULS Cardiac Test Technologies" to Predictive

19    Health, an entity created and owned by Dr. Harrington.  According to Debtor's Schedule E/F,

20    Predictive Health is the largest unsecured creditor of this bankruptcy estate.[7]  *See* Debtor's

21    Schedule A/B at question 62 and Debtor's Schedule G, which, along with Debtor's remaining

22    schedules and statements (all filed together as Docket No. 52) are attached as **Exhibit 12** to the

23    RJN.

24

25

26    _____

27    [6] The parties paid their jury fees as reflected at docket entries 47 and 50.

[7] As reflected in the Statement and Designation by Foreign Corporation, filed on December 6, 2016 with the
California Secretary of State by Dr. Harrington's wife, Estella Harrington, Predictive Health Diagnostics Company

28    was created in Delaware shortly after the initiation of the OC Litigation, on the same day that Dr. Khalid filed his
initial cross-complaint against Debtor.  Exhibit 11 to the RJN, Dkt. No. 14.  The Statement and Designation by
Foreign Corporation is attached as **Exhibit 13** to the RJN.

1   The assertion in Debtor's schedules that Debtor does not own its IP but merely licenses it

2   from Dr. Harrington's later-created entity fails to stand up to even passing scrutiny. Judge Ryan

3   ruled in the SASOD that "the record is clear that at the time of the subject transaction [Movants'

4   2014 investment in the Debtor] the following is not credibly disputed… Dr. Harrington indicated

5   to Dr. Khalid that his investment would be the new [PULS Cardiac Test]." SASOD at 40:1-7.

6   Debtor could not have licensed the PULS Cardiac Test from Predictive Health from 2014 through

7   the end of 2016 because Predictive Health *did not exist*. Indeed, Judge Ryan found Dr. Khalid's

8   testimony, that Dr. Harrington's contribution of the PULS Cardiac Test was a term of Dr. Khalid's

9   and Dr. Harrington's agreement, more credible that Dr. Harrington's claims to the contrary.

10  SASOD at 31:19-22; 41 n.63.

11   More importantly, however, Debtor's Schedules reveal that there was no legitimate

12  bankruptcy purpose for this case, and that the sole reason for its initiation was to use this

13  Bankruptcy Case as a litigation tactic. Almost all of the Debtor's unsecured debt arises from

14  insider transactions with Dr. Harrington's entities Predictive Health and Ark Partner. Debtor listed

15  secured debt of just $313,496. *See* page **260** of **Exhibit 12**.

16   The only litigation Debtor was involved in on the Petition Date, according to its Statement

17  of Financial Affairs, are the three lawsuits with Movants, all of which concern the internal affairs

18  of the Debtor and the individual interests of certain shareholders, but have nothing to do with the

19  Debtor's assets, business operations or debts. *See* pages **279-280** of **Exhibit 12**.

20   Finally, contrary to the SASOD, Debtor only disclosed two shareholders in its List of

21  Equity Security Holders, one of which is Ark Partner, an entity or fictitious name owned/used by

22  Dr. Harrington. Debtor's Statement of Financial Affairs further reveals that Matthew Nunez, who

23  served as Debtor's CEO since 2018, while not coincidentally also serving as CEO of Predictive

24  Health,[8] resigned as Debtor's CEO on March 10, 2021, the day before the Petition Date. On that

25  day, Dr. Harrington, his wife Estrella, and others also purportedly resigned their positions as

26  members of the Old Board. *See* page **258** of **Exhibit 12**. Presumably, the prior CEO and

27

28

---

[8] https://www.linkedin.com/in/matthew-nu%C3%B1ez-081a1621/

1   members of the Old Board resigned solely to keep their names off the Bankruptcy Case and any

2   future disclosures.  That same day, Debtor claims that it appointed Dan Angress to be CEO.  Mr.

3   Angress is a long-time associate of Dr. Harrington, and was listed as an unsecured creditor of the

4   Debtor pursuant to its Schedule E/F.

5       Despite an obvious lack of personal knowledge[9], Mr. Angress signed Debtor's schedules

6   and statements, testifying to all of the disclosures required therein under penalty of perjury.  Mr.

7   Angress has also filed with the Court a document entitled "Resolution of Board of Directors of

8   Global Discovery Biosciences Corporation, a Delaware corporation" by which he purported that

9   on March 23, 2020, ***after the Petition Date***, he personally, authorized Debtor's filing of the

10  Bankruptcy Case and the hiring of Debtor's bankruptcy counsel as Debtor's "Chief Executive

11  Officer and Secretary."  Additionally, Mr. Angress signed a Statement Regarding Authority to

12  Sign and File Petition executed March 23, 2021.  Both of these documents are part of Debtor's

13  original set of schedules filed on March 25, 2021 at Docket No. 22 and are attached to the RJN as

14  **Exhibit 12**.

15      **F.  Relevant Post-Petition Events in This Unauthorized Bankruptcy Case**.

16      On April 5, 2021, Movants filed their Original Dismissal Motion.  In responding to the

17  Original Motion to Dismiss, Debtor admitted it failed to obtain proper corporate authorization for

18  the filing of this case.  Instead, Debtor claimed that a ratification of a deficient attempt to obtain

19  corporate authorization was made on April 19, 2021, *i.e.*, well after the Original Dismissal Motion

20  was filed and well after the Petition Date.  *See* Docket No. 37, Debtor's opposition to the Original

21  Dismissal Motion at 8:20-10:20, attached as **Exhibit 14** to the RJN.  However, Debtor failed to

22  present evidence of a valid ratification under Delaware law.  The defective nature of Debtor's

23  purported ratification and unavailability, as a matter of Delaware law, of self-help to effectuate a

24  ratification was addressed by Movants in their reply in support of the Original Dismissal Motion.

25  *See* Movants' reply, Docket No. 56 at 2:20-3:15, attached to the RJN as **Exhibit 15**.

26

27

28

---

[9] Mr. Angress' lack of knowledge of basic facts regarding the Debtor and its operations was detailed in the
Reconsideration Motion, Docket No. 97, 9:18-11:2.

1       Nevertheless, without addressing the merits of the ratification dispute that arose out of

2   Debtor's defense of the Original Motion to Dismiss, the Predecessor Court denied dismissal of this

3   case but abstained from adjudicating the pending state court disputes among Debtor, the Khalid

4   Parties and third parties, such as Dr. Harrington.  In denying the Original Dismissal Motion, the

5   Predecessor Court explained its thinking that,

6          "…it would be best to appoint a Chapter -- direct the U.S. Trustee to appoint a Chapter 11
           Trustee **who would mind the store while the shareholders are litigating in the state courts**.
7          And then once the state court has established who the shareholders are and who's in control,
           then at that point the Trustee, unless there are compelling reasons, could be relieved of his or
8          her duties as Trustee, and those shareholders could then assume the debtor.

9          . . .

10         But again, it would be with the same restrictions that the Court mentioned earlier, namely, it
           wouldn't be proceeding to plan confirmation or anything like that. It would simply be
11         **maintaining the status quo until the Delaware courts and the California state courts
           could determine the corporate governance matters** that are at issue here."

12

13  *See* Transcript from May 10, 2021 hearing on the Original Dismissal Motion at 10:17-25 (emphasis

14  added) and *Id*., at 19:9-15 (emphasis added), respectively, attached as part of Docket No. 199. The

15  Transcript from the hearing on the First Dismissal Motion is attached to the RJN as **Exhibit 16**.

16      Movants sought reconsideration of the order denying the Original Dismissal Motion

17  ("Dismissal Denial Order"), arguing, among other things, that it was error not to rule on the

18  validity of the purported ratification.  The Dismissal Denial Order is attached to the RJN as

19  **Exhibit 17**.  On August 12, 2021, by order of the Predecessor Court, Movants' request for

20  reconsideration was denied ("Reconsideration Denial Order").  *See* Docket No. 156.  Following

21  entry of the Reconsideration Denial Order, Movants timely appealed that order and the Dismissal

22  Denial Order.  *See* Docket Nos. 160 and 161, Notices of Appeal (in which they elected to proceed

23  with such appeals before the United States District Court).

24      In furtherance of the vision of the case the Predecessor Court set forth at the hearing on the

25  Motion to Dismiss, on May 19, 2021, the Court *sua sponte* issued, and subsequently granted, its

26  *Order to Show Cause Why the Debtor Global Discovery Biosciences Corporations Should Not Be*

27

28

*Removed as Debtor-In-Possession Pursuant to 11 U.S.C. § 1185* (the "OSC"), resulting in the

removal of the Debtor from possession. *See* Docket Nos. 74 (OSC) and 109 (Order on OSC).

Due in part to objections by the Trustee to the *Motion for Entry of Order Approving*

*Stipulation for Relief from Stay Pursuant To 11 U.S.C. § 362 (Nonbankruptcy Action)* [Docket No.

88] ("Stay Relief Motion"), the first of which was interposed before the Debtor was removed from

possession, the automatic stay was not lifted until July 20, 2021. *See* Docket Nos 104 and 124

(Trustee's objections) and 144 (Order lifting the stay). The Order granting the Stay Relief Motion

is attached to the RJN as **Exhibit 18**.

On December 22, 2021, over the strenuous objection of Movants, the Predecessor Court

granted the Trustee's Motion by Subchapter V Trustee to Convert Case to One Under Chapter 7

[Docket No. 200] ("Motion to Convert"). *See* Docket No. 254, order granting Motion to

Convert.[10]

The counsel that filed this case, Weiland Golden Goodrich LLP ("WGG") sought

employment via application filed on May 10, 2021 ("WGG Employment Application"). In the

WGG Employment Application (and Debtor's amended Statement of Financial Affairs), it was

disclosed that WGG was paid a $30,000 retainer from the funds of the Debtor. *See* WGG

Employmnet Application, attached to the RJN as **Exhibit 19**. On May 5, 2022, WGG filed a

motion to withdraw as counsel to the Debtor due to the absence of any responsible individual to

act on behalf of the Debtor following Mr. Angress' post-petition resignation ("Motion to

Withdraw"). *See* Motion to Withdraw, Docket No. 297, attached as **Exhibit 20** to the RJN. The

Motion to Withdraw was granted by Order entered on the same date. *See* Docket No. 299.

**G. Final Control Judgment in the Delaware Consent Action Confirms That the Consent**

**Was Effective As of January 31, 2021 Such That Debtor's Case Was Commenced**

**Without Proper Corporate Authority.**

After the automatic stay was lifted, Movants swiftly returned to the Delaware Chancery

---

[10] Movants have appealed this order, and such appeal remains pending along with the two prior appeals referenced
above. Briefing of the appeals has been continued on multiple occasions due to a failed but once contemplated
stipulation with the Trustee to dismiss this case, and because of the impending trial in the Consent Action, among
other things.

1    Court to obtain a new trial date in the 225 Consent Action. *See* Landau Dec. ¶ 2.

2            On September 21, 2021, a status conference hearing was held in the Consent Action at

3    which the Chancery Court set a trial date of November 30, 2021, on the Consent Action. *Id.*, at ¶

4    3.   However, Dr. Harrington continually sought to delay trial. The Chancery Court first set trial

5    for November 30. Then, Dr. Harrington sought to stay that action in favor of the California

6    Action. *See* Landau Dec. ¶ 3.  The Chancery Court postponed trial until December 17 so it could

7    hear the motion to stay on November 30.  At the November 30 hearing, Dr. Harrington argued that

8    issues of dilution must be decided in California before the ownership claims could be adjudicated

9    in Delaware. *See* Landau Dec. ¶ 4.  The Chancery Court then postponed trial again until the

10   California Court could address two issues, whether the California Action would decide any issues

11   of dilution and if it would do it promptly. *See* Landau Dec. ¶ 5.  On January 13, 2022, Judge

12   Richard Lee, the California Superior Court Judge, stated that he would not resolve the issue of

13   dilution "by any definition of the word promptly." *See* Landau Dec. ¶ 6.  On January 19, 2022, Dr.

14   Harrington sought to postpone the Delaware trial again, claiming, after over a year, that he was

15   unable to access documents in a database from the California Action. However, Dr. Harrington's

16   inability to access the database was due to his own failure to pay his discovery vendor. As a result,

17   the Chancery Court postponed trial once more, finally setting it for May 3. *See* Landau Dec. ¶ 7.

18           After defeating each specious argument and motion filed by Dr. Harrington, trial was

19   finally held on May 3, 2022.  On May 31, 2022, the Delaware Chancery Court issued its written

20   Memorandum Opinion in the Delaware Consent Action, a true and correct copy of which is

21   attached to the RJN as **Exhibit 21**.  The Memorandum Opinion discredits Dr. Harrington

22   completely, rejecting each of his preposterous claims, concluding as follows:

23           Because the Petitioners had a 55% ownership interest in GDBC at the time of the
             Consent's execution, I find that the Consent was valid under Delaware law, and thus that
24           the Petitioners' Board replaced the Prior Board as of that time.

25   *Id.* at page **497**.

26           On June 9, 2022, the Delaware Chancery Court entered its Final Order and Judgment, in

27   which it ordered and adjudged (consistent with the Memorandum Opinion) that:

28           1.   Petitioners [Movants] had a 55% ownership interest in GDBC as of
                  the dates that the Consent was executed and delivered to the

Company;

2. The Consent was a valid exercise of Petitioners' authority as majority stockholders under Delaware law;

3. The Consent was a valid exercise of Petitioners' authority as majority stockholders under Delaware law;

4. Dr. Khalid, Kenin M. Spivak, Robert Kasprzak, and Daniel Elliot have been the lawful directors of GDBC since the delivery of the Consent on February 12, 2021.

See Control Judgment attached as Exhibit 22 to the RJN, page **501**.

## III.    ARGUMENT

### A. The Court Should Dismiss this Case for Lack of Jurisdiction.

A person filing a bankruptcy petition must be authorized to do so, and the authorization must derive from state law. *Keenihan v. Heritage Press, Inc. (In re Heritage Press, Inc.)*, 19 F.3d 1255 (8th Cir. 1994) (dismissing bankruptcy where petitioner did not have the authority to file the debtor's petition). The United States Supreme Court has long recognized that if "those who purport to act on behalf of the [entity] have not been granted authority by local law to institute the [bankruptcy] proceedings, it [the Court] has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. 100, 106 (1945); *e.g., In re Cloverleaf Properties*, 78 B.R. 242, 246 (9th Cir. BAP, 1987) (holding that bankruptcy court lacked jurisdiction to enter order where bankruptcy petition had been improperly filed by one partner without the consent of another partner). "If the bankruptcy filing was not authorized, there is cause to dismiss case." *In re Innocenti*, LLC, 2016 Bankr. LEXIS 2337, *7 (Bankr. N.D. Cal, 2016) *citing Price* at 106. **Indeed, "[t]he absence of such authority is a defect that cannot be cured.** Absent proper authority to file a voluntary petition, the debtor cannot rely on equitable grounds to proceed with a bankruptcy case." 2 Collier on Bankruptcy P 301.04 (16th 2020) (emphasis added). This is because federal courts have no power to consider claims, or in this case, bankruptcy petitions, for which they lack subject-matter jurisdiction. *See Chen-Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992). Federal courts are under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003).

1    "[C]ases decided under the Bankruptcy Code look to state law and instruments of

2    incorporation to determine whether a petition is filed with the proper corporate authority." *In re*

3    *Yellow Cab Co-op. Ass'n*, 144 B.R. 505, 509 (D. Colo. 1992).  *See In re Gen-Air Plumbing &*

4    *Remodeling, Inc*., 208 B.R. 426, 430 (Bankr. N.D. Ill. 1997) (citations omitted) ("The authority to

5    file a bankruptcy petition on behalf of a corporation must derive from state corporate governance

6    law, and the corporate by-laws.").  Many courts have dismissed cases on facts such as exist here

7    where the bankruptcy filing was either approved by an invalidly elected director (*In re Arkco*

8    *Props., Inc*., 207 B.R. 624 (Bankr. E.D. Ark. 1997)), or a corporate officer who authorized the

9    filing when such decision was properly within the purview of the board of directors (*In re Al-Wyn*

10   *Food Distributors, Inc., Inc*., 8 B.R. 42 (Bankr. M.D. Fla. 1980)).

11   Debtor is a Delaware corporation, which means that Delaware law governs the internal

12   affairs of the company.  *See, e.g., Edgar v. Mite Corp*., 457 U.S. 624, 645 (1982), *citing*

13   Restatement (Second) of Conflict of Laws § 302, Comment b, pp. 307-308 (1971), ("The internal

14   affairs doctrine is a conflict of laws principle which recognizes that only one State should have the

15   authority to regulate a corporation's internal affairs -- matters peculiar to the relationships among

16   or between the corporation and its current officers, directors, and shareholders -- because

17   otherwise a corporation could be faced with conflicting demands.")

18   Delaware law provides that "[t]he business and affairs of every corporation organized

19   under this chapter shall be managed by or under the direction of a board of directors, except as

20   may be otherwise provided in this chapter or in its certificate of incorporation.  8 Del. C. § 141(a).

21   Section 228(a) of the General Corporation Law provides that, unless otherwise provided by the

22   certificate of incorporation, any action that permitted or required to be taken by stockholders at a

23   meeting may be taken without a meeting if a consent (or consents) in writing, setting forth the

24   action so taken, is signed by the holders of record of outstanding stock having not less than the

25   minimum number of votes that would be necessary to authorize or take such action at a meeting at

26   which all shares entitled to vote thereon were present and voted.  8 Del. C. § 228(a).

27   Based on the final Control Judgment, it is no longer subject to dispute that Debtor's Old

28   Board was removed by the Consent, effectuated in accordance with Section 228 of the Delaware

General Corporation Law as of January 31, 2021, 39 days before the Petition Date.  As such, only the New Board could authorize Debtor's filing of this case.  Certainly, by law, no filing could be authorized by the (alleged) CEO without the action of any board of directors and the attempted post-petition ratification by those without authority is likewise invalid.  "A bankruptcy filing is unauthorized if the board of directors purporting to authorize it was not lawfully constituted and acting lawfully in so doing."  *In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 832 (Bankr. S.D. Ohio 2010) (citing 9A Am.Jur.2d Bankruptcy § 894 ("[T]he board of directors must be lawfully constituted and acting lawfully when authorizing the filing of a petition.")); *In re N2N Com., Inc.*, 405 B.R. 34, 41 (Bankr. D. Mass. 2009) (dismissing bankruptcy petition filed by "assignee" of corporation's creditors and concluding that, under Delaware law, only the board of directors could authorize a bankruptcy filing).

Recently, in *In re Sino Clean Energy, Inc.*, 901 F.3d 1139 (9th Cir. 2018), the Ninth Circuit affirmed the dismissal of a Chapter 11 bankruptcy petition filed by former corporate directors after a state court granted a motion brought by shareholders of the corporation appointing a receiver.  There, the corporation was incorporated in Nevada, which, by statute, vests decision-making authority in a corporation's current board of directors.  *Id.* at 1141.  The court concluded that the individuals who filed the bankruptcy petition were not members of the board at the time they filed the petition, and they were not authorized to file a bankruptcy petition on behalf of the corporation.  *Id.*

With respect to vesting authority in the current board of directors, the Nevada statute addressed in *Sino Clean Energy* and Section 141 of the Delaware General Corporations Law are substantially similar:

> Unless the articles of incorporation or the bylaws provide for a greater or lesser proportion, a majority of the board of directors of the corporation then in office, at a meeting duly assembled, is necessary to constitute a quorum for the transaction of business, and the act of directors holding a majority of the voting power of the directors, present at a meeting at which a quorum is present, is the act of the board of directors.

Nev. Rev. Stat. § 78.315(1).  Similarly, in Delaware:

> The vote of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors unless the certificate of

incorporation or the bylaws shall require a vote of a greater number.

8 Del. C. § 141(b).

Based on the Control Judgment and the foregoing law, the Old Board had no authority to act in hiring Mr. Angress to be Debtor's CEO the day before the Petition Date, Mr. Angress was not properly elected as a director of the Debtor, and the New Board did not authorize the filing of this case.  Therefore, the Court should dismiss this case for lack of jurisdiction.

## IV.    CONCLUSION

For all of the foregoing reasons, the appropriate ruling on this motion is to dismiss Debtor's case immediately.

Dated: October 3, 2022                          Respectfully submitted,

**GOE FORSYTHE & HODGES LLP**


By: /s/Marc C. Forsythe
    Marc C. Forsythe
    Charity J. Manee
    Attorneys for Khalid bin Jabor Al Thani
    and Trivalley Trading & Contracting, WLL

## V.    **DECLARATION OF ERIC LANDAU**

I, Eric Landau, declare and state,

1.    I am an attorney duly admitted to practice law in the State of California, I am a member of the Bar of this Court, and I am a partner with ELLENOFF GROSSMAN & SCHOLE, LLP ("EGS"), attorneys of record for Khalid Bin Jabor Al Thani ("Dr. Khalid") and Trivalley Doha Qatar a/k/a TriValley Trading & Contracting, WLL ("Trivalley," and together with Dr. Khalid, "Movants") in the Orange County Superior Court action entitled *Global Discovery Biosciences Corporation v. Khalid bin Jabor Al Thani*, Case No. 30-2016-00878822-CU-BC-CJC ("OC Litigation"), as well as counsel of record for Dr. Khalid and Trivalley in the Chancery Court of Delaware in the actions entitled *Trivalley Trading & Contracting, WLL v. Global Discovery Biosciences Corporation*, C.A. No. 2020-1015-JRS ("Delaware Inspection Action") and *Trivalley Trading & Contracting, WLL v. Global Discovery Biosciences Corporation*, C.A. No. 2021-0196 ("Delaware Consent Action"). I am the lead attorney responsible for the handling of the OC Litigation, and personally involved with all aspects of the Delaware Inspection Action and the Delaware Consent Action. If called as a witness, I could and would testify competently and truthfully as to the facts set forth herein, as I know each to be true based upon my review of the files and records maintained by EGS in the regular course of its representation Movants, the pleadings and docket of the OC Litigation, the pleadings and dockets on file in related Delaware actions involving both Dr. Khalid and Trivalley, on one side, and Global Discovery Biosciences Corporation ("Debtor") on the other side, and my personal knowledge of hearings at which I personally appeared. I submit this declaration in support of Movant's motion to dismiss Debtor's bankruptcy case ("Bankruptcy Case") to which this declaration is attached.

2.    After the automatic stay was lifted in the Bankruptcy Case, Movants swiftly returned to the Delaware Chancery Court to obtain a new trial date in the 225 Consent Action.

3.    On September 21, 2021, a status conference hearing was held in the Consent Action at which the Chancery Court set a trial date of November 30, 2021, on the Consent Action. Then, Dr. Harrington sought to stay that action in favor of the California Action.

4.    The Chancery Court postponed trial until December 17 so it could hear the motion to

stay on November 30.  At the November 30 hearing, Dr. Harrington argued that issues of dilution must be decided in California before the ownership claims could be adjudicated in Delaware.

5.    The Chancery Court then postponed trial again until the California Court could address two issues, whether the California Action would decide any issues of dilution and if it would do it promptly.

6.    On January 13, 2022, Judge Richard Lee, the California Superior Court Judge, stated that he would not resolve the issue of dilution "by any definition of the word promptly."

7.    On January 19, 2022, Dr. Harrington sought to postpone the Delaware trial again, claiming, after over a year, that he was unable to access documents in a database from the California Action. However, Dr. Harrington's inability to access the database was due to his own failure to pay his discovery vendor. As a result, the Chancery Court postponed trial once more, finally setting it for May 3.

8.    Should the Court have any questions regarding the foregoing and the state court matters involving the Debtor, I will gladly address those in a supplemental declaration, as needed.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed October 3, 2022, at Irvine, California.

_____
Eric Landau

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**18101 Von Karman Avenue, Suite 1200, Irvine, California 92612.**

A true and correct copy of the foregoing document entitled (*specify*):  **NOTICE OF MOTION AND SECOND MOTION FOR ORDER DISMISSING DEBTOR'S BANKRUPTCY CASE FOR LACK OF JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ERIC LANDAU ATTACHED HERETO IN SUPPORT THEREOF**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **10/3/2022,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **10/3/2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **10/3/2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

<u>Via Overnight Service::</u>    Honorable Scott C. Clarkson
Bin for Judge Scott C. Clarkson, by 5th Floor Elevator
411 W. Fourth Street
Santa Ana CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 3, 2022 | Arthur E. Johnston | /s/ Arthur E. Johnston |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*                                                                **F 9013-3.1.PROOF.SERVICE**

**ATTACHED SERVICE LIST**

1.    <u>TO BE SERVED BY THE COURT VIA NOTICEOF ELECTRONIC FILING (NEF):</u>

- **Jeremy Faith**    Jeremy@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- **Marc C Forsythe**    kmurphy@goeforlaw.com,
  mforsythe@goeforlaw.com;goeforecf@gmail.com
- **Beth Gaschen**    bgaschen@go2.law,
  kadele@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com;lbracken@wgllp.com;bgaschen@ecf.courtdrive.com;gestrada@wgllp.com
- **Richard H Golubow**    rgolubow@wghlawyers.com,
  jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Charity J Manee**    cmanee@goeforlaw.com, kmurphy@goeforlaw.com
- **Monserrat Morales**    Monsi@MarguliesFaithLaw.com,
  Vicky@MarguliesFaithLaw.com;Helen@marguliesfaithlaw.com;Angela@MarguliesFaithlaw.com
- **Mark M Sharf (TR)**    mark@sharflaw.com, C188@ecfcbis.com;sharf1000@gmail.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

2.    <u>SERVED BY UNITED STATES MAIL:</u>

| | |
|---|---|
| Global Discovery Biosciences Corporation, a Delaware corporation<br>13885 Alton Parkway, #B<br>Irvine, CA 92618 | Margulies Faith, LLP<br>16030 Ventura Blvd., Suite 470<br>Encino, CA 91436 |
| SLBiggs<br>10960 Wilshire Boulevard<br>7th Floor<br>Los Angeles, CA 90024 | SLBiggs, a Division of SingerLewak<br>10960 Wilshire Blvd, 7th Fl<br>Los Angeles, CA 90024 |